State of the case
as presented by
the record and
questions made.

One who enters
on land claiming
it as his own, be-
fore 7 years ex-

## Ray *vs* Barker's heirs.

APPEAL FROM THE HICKMAN CIRCUIT.

*Entries. Void patents. Evidence. Compact with Virginia.*

JUDGE EWING delivered the Opinion of the Court.

BARKER'S HEIRS, claiming under the elder patent, which issued in 1826, on a survey made in 1825, by virtue of an entry made on a military warrant in 1784, on the south-west side of the Tennessee river, brought an action of ejectment and recovered judgment against Ray, who was in possession, claiming under a junior patent which issued for a quarter section of land under the laws of Kentucky. From this judgment Ray has appealed to this Court.

In the progress of the trial, evidence was adduced tending to show that Ray settled on the land in controversy under his own title, and remained on the same for more than seven years before this suit was brought. On the other side, testimony was examined tending to the conclusion, that after or about the time of his settlement, Ray made an arrangement with one of the heirs of Barker, acting for the whole, by which he undertook the agency and superintendence of Barker's claim, and held the possession in amity with Barker's title and not adverse to it.

Proof was also adduced tending to show that Barker's patent did not cover the identical same land embraced by his entry.

Upon the giving and refusal of instructions upon these facts, several questions of law are raised in this Court.

Without going into an examination of the instructions given or refused, in detail, we would remark, as our conclusion upon the whole case:

1st. That though the defendant entered upon and settled on the land in contest, claiming under his own title and adverse to that of the plaintiffs below, if afterwards

and before the expiration of seven years, he made an arrangement with one of the heirs, acting for all, by which he claimed to hold under their claim, or in amity with it, that he cannot rely upon the seven years statute of limitation to defeat the plaintiffs' recovery. Or in other words, his settlement and adversary holding, under his own title, must have *continued* adversely for seven years to enable him to rely on the bar. Nor will it suffice that he has held possession under both titles.

2nd. But if he entered and took possession under his own title and not under that of the plaintiffs, though he afterwords undertook the agency and superintendence of the plaintiffs' claim, and claimed to hold, and in fact did hold the possession under it, or in amity with it, without abandoning his own title or the possession under it, he is not estopped from setting up his own title and right to possession under it, in contravention of the title of the plaintiffs. The estoppel applies only when he enters under the plaintiffs' title, or after he has entered under his own title abandons it and all claim of possession under it, and agrees to hold exclusively under the opposing title, or accepts a lease under it, by which he imposes on himself the relation of tenant, which is an implied abandonment of his own title.

3rd. The act for surveying the military claims west of the Tennessee, approved December 26, 1820, *Stat. Laws,* 1043, provides that, "to enable the Register to ascertain whether the survey is made according to entry, a copy of the entry shall be returned to the Register's office, with the plat and certificate of survey, and any patent issuing on a survey made contrary to the location *shall be void,* to all intents and purposes, so far as the same may be different and variant from the location."

In the construction of this statute, we are clearly of opinion, that as the surveyor and Register must be presumed to have done their duty, the patent must be deemed to be *prima facie* evidence of title, which, without other proof of identity between the boundaries of the entry and patent, will entitle the plaintiffs to maintain their action. But that it is competent for the defendant to prove a want of identity, and so far as the patent is

---

RAY
*vs*
BARKER'S HEIRS.

pire he agrees to hold under another having an elder patent, he cannot thereafter rely on the limitation of 7 years against him.

One who enters on land with title, claiming it as his own, and afterwards, before the 7 years expire, undertakes an agency and superintendence for one holding an elder patent for the same land, and claim to hold under it, and dies holding under it, without abandoning his own title or the possession under it, his heir is not estopped to set up his own title and right to possession under it.

Surveys on land west of the Tennessee, contrary to location are *void*—And in ejectment for military land west of the Tennessee it is competent for def't. to show by parol proof, that the survey is made variant

RAY
*vs*
BARKER'S HEIRS.

from the location; and therefore void to defeat the action.

shown, satisfactorily to be variant from the entry, it is void, and will not support an action. And though the defendant may have accepted an agency over, and superintendence of the claim of the plaintiffs, and held possession in amity with it, if he did not abandon or surrender his own title, nor the possession under it, nor accept a lease, or agree to become the tenant of the plaintiffs, he is not estopped from defeating the plaintiffs' title by showing a variance between the entry and patent.

As the Circuit Court has departed from the principles here settled, in giving and withholding instructions, and especially in withholding instructions, No. 2 and 4, moved by the defendant below, the judgment must be reversed.

And as there will have to be a re-trial of the case, we would suggest that if the two heirs, who are said to be dead, died without issue, to the extent that their interest descended to or devolved upon their surviving brothers and sisters, who are plaintiffs, before the demise in their declaration, the plaintiffs may be entitled to recover such interest, as well as their own original interest.

Judgment reversed with costs, and the cause remanded that a new trial may be granted.

### ADDITIONAL OPINION.

May 28, 1841.

THIS case having been submitted to the Court without oral argument, at a former term, and the foregoing opinion delivered, a re-argument was directed at the earnest solicitation of counsel, who were not employed, and suggestions filed, representing that so much of the opinion as allows the patent of Barker's heirs to be impeached by testimony, showing a variance between it and the entry, is calculated to affect deeply, not only the interests of the officers and soldiers of the Virginia state line and their descendants, but also all others deriving title under patents issued to them. And now, after the fullest investigation of the subject, with all the lights afforded us by the argument of counsel and a re-examination of the statutes of this state and of Virginia, bearing on the sub-

ject, and also of the compact between the two states, we are constrained to adhere to the opinion.

Though the statutes of Virginia had reserved and set apart the district of country in which Barker's entry was located, for the benefit of her officers and soldiers, by the 10th section of the compact she reserved to herself the right to make disposition of the unlocated lands in said district only, until the 1st day of May, 1792, and no longer, and after that time, yielded up to the state of Kentucky, subject to her own disposition, "the residue of all lands remaining within the limits of said district."

The *private right* of Barker's heirs, which is protected by the seventh section of the compact, and the only private right which they hold, derived from the laws of Virginia prior to the separation, was their *entry*. To the full extent of the land covered by their entry, and no further, they have a right to demand protection, and that their claim shall be tested and determined by the laws then in force in Virginia. Beyond their entry they are not protected, as beyond its boundaries they had no *private right* at the separation, or at the adoption of the compact.

Kentucky, in allowing a survey to be made and a patent to be issued thereon, had a perfect right, consistently with her obligations under the compact, to limit and restrict the survey to the land embraced in the entry, and to declare void so much of the patent as should depart from the entry. She had a right to the unappropriated lands, or lands not embraced and included within the military entries made prior to the separation, in that district of country, and as means of securing it, when she allowed these entries to be surveyed and patents to issue thereon, she had a perfect right to adopt those means, and to impose those terms which her own discretion might dictate, as best calculated to protect the unappropriated lands in the district from intrusion from these claimants, and cannot be regarded as infringing any private right by so doing.

The Legislature of Kentucky, as the means of restricting them to the boundaries of their entries, by the act of 1820, has given specific directions to the surveyor as to the manner of executing the surveys, the bearing and dis-

RAY
*vs*
BARKER'S HEIRS.

Virginia, by the compact with Kentucky, reserved the right of disposing of the lands west of the Tennessee river until 1st May, 1792.

7th sec. of compact protected private rights derived from Va. and their determination by the laws of Virginia.

Barker's heirs had no *private rights* beyond the limits of their entry.

The Legislature of Kentucky had a right to confine the survey on entries west of Tennessee river to

RAY
*vs*
BARKER'S HEIRS.

the ground designated by the entry, and did not thereby infringe the compact.

tance of each corner, from the nearest corner of a township or section, as surveyed by Henderson, the state surveyor, and has required him to embrace in the survey the quantity of land only embraced in the entry. And to enable the Register to ascertain whether the survey is made according to the entry, a copy of the entry is required to be returned to the Register's office with the plat and certificate of survey; and the Register is prohibited from issuing a grant, if it shall appear to him that the survey contains a surplus of more than five per cent. on the quantity specified in the plat and certificate of survey, or that other land has been surveyed than that described in the entry. And if all these guards shall fail in restricting the survey to the land embra'ced in the entry, and the variance shall escape the detection of the Register, and a patent shall issue, then, as a further security, the Legislature has declared the patent "*void* to all intents and purposes, so far as the same may be different and variant from the location."

Where the Legislature has declared that for any *cause* a patent shall be held *void*, parol proof *dehors* the patent is admissible to prove the *cause* which renders it void.

The doctrine has become too firmly fixed by the repeated adjudications of this Court, now to be shaken, that when the Legislature has, by statute, declared a patent *void*, which issues contrary to its enactment, that the facts necessary to show that it issued contrary to the statute, and is therefore void, may be established by parol or other proof, *dehors* the patent, and when established will defeat a recovery upon it: *Dallam* vs *Handley*, 2 *Marsh.* 418; *Atchley* vs *Latham*, 2 *Litt.* 362; *Jennings* vs *Whitaker*, 4 *Mon.* 51; *Pearson* vs *Baker and Asbell*, 4 *Dana*, 322; *Cain* vs *Flynn, Same* 501.

That a patent is void may in some cases be shown collaterally.

In the three last cases cited, the doctrine is admitted that when a statute declares the patent *void*, its nullity may be enquired into collaterally, and by evidence *dehors* the patent. Otherwise, when the statute does not declare the patent void or use language tantamount to such declaration.

It is, therefore, the opinion of the Court that the former opinion stand unaltered.

*Owsley* for appellant: *F. T. Hord* for appellees.