## COCKRILL vs. KIRKPATRICK.

1. A note payable "*in the currency of this State*," is payable either in gold or silver coin, or in the notes of the Bank of Missouri.

2. A note payable "in the current money of Missouri," is payable in gold or silver coin alone

3. Where a note is made payable "in the currency of the State," it is not competent to shew by parol testimony, that it was understood by the parties to mean any other than gold and silver, or notes of the Missouri Bank.

4. The contents of a written instrument cannot be proven until the loss or destruction of the the instrument is proven.

5. A principal cannot maintain an action against an agent for money collected by him until a demand is made.

6. Whether a demand has been made is a question for the jury. It may be shewn by circumstances.

7. Although a tender be made and refused, the plaintiff is entitled to recover his debt. The tender prevents the interest from running, and if the money be brought into court will save costs.

Cockrill vs. Kirkpatrick.

9. A tender need not be made in constitutional coin, but will be good in bank notes, unless objected to for that reason. If, however, the notes be depreciated, the refusal to accept will be presumed for that reason.

ERROR to Randolph Circuit Court.

DAVID TODD, for Plaintiff.

The plaintiff insists upon these points to reverse the judgment:

1. That evidence to prove witness' understanding of the legal effects of a contract, to be different from the substantial contents of an absent contract, is illegal and incompetent; 7 Mo. Rep. 515.

2. If defendant has collected money for plaintiff, and a demand is made, and no payment, a recovery can be had, and for interest from refusal.

3. A demand may be inferred, and is not to be proven in express terms.

4. When money is tendered and not received, upon suit the plaintiff can recover the principal, and unless the money is in court upon the plea of tender, and there paid over, judgment must go for the plaintiff; 13 Wend. 390.

5. That if a note is payable in currency at a particular day, and is not paid on that day by the payor, and it is his duty to seek the creditor for that purpose, he is not permitted subsequently to pay it in such currency without the consent of payee.

6. A plea of tender made of such currency after such day of payment is not good.

JOHN B. CLARK, for Defendant.

The defendant in error relies upon the following points and authorities to sustain the decision of the circuit court:

1. The defendant in this case was but the agent of the plaintiff in the collection of the money in the note, and had a right to collect the same in the kind of currency contracted to be taken by the plaintiff, although nothing was said in the note about the kind of money agreed to be paid and received in discharge; yet if there was an agreement to take currency, and the agent received the same kind of money agreed to be taken by the principal, he is bound to receive the same from the agent; Theobold on Agency, 356.

2. In this case the plaintiff has no right of acton until h e makes a

44

demand of the agent to account.. This principle has been decided by
this court in the cases of Benton vs. Craig, 2 Mo. Rep. 160; Burton vs.
Collier, 3 Mo. Rep. 223.

3. There being no special instructions to the agent in this case, and
he having transacted the business of his principal in the usual manner
observed in the country at that time, the principal was bound and the
agent absolved from any liability, although a loss ensued; Theobold on
Agency, 356 and 357.

McBRIDE, J., delivered the opinion of the court.

Cockrill brought his action before a justice of the peace in Randolph
county, against Kirkpatrick, for money collected by the defendant for
the plaintiff, where the defendant obtained judgment; from which the
plaintiff appealed to the circuit court, where the defendant again having
judgment, the defendant sued out his writ of error and has brought his
case to this court.

The following is the evidence, as preserved by the bill of exceptions,
to-wit: R. Denson testified that he was indebted to Noble on a note:
that said note was assigned by Noble to the plaintiff: that above two
years ago he paid the amount, $30 12 1-2, to the defendant, who had
said note for collection: that he paid said note in Illinois bank paper,
except 12 1-2 cents which he paid in specie: that it was paid in notes
on the Springfield or Shawneetown Bank. His note to Noble was pay-
able in the currency of this State: that it was his understanding that
the note was to be paid in the common currency of the country, and
that Springfield, Shawneetown, Indiana, &c., bank paper, was at that
time the common currency of the country, but that there was more Illi-
nois paper than any other kind.

N. Coates testified, that about January, 1842, he was doing business
in Cockrill's store in Huntsville, when defendant came there and said
to plaintiff, I have collected or have got your money from Denson:
plaintiff said very well, or I am glad of it: that witness then went into
another room, and in a few minutes after, on his return, heard plaintiff
say to defendant, I will not pay any such price or any such charges:
that he understood this to be in relation to a charge which defendant
made for collecting the money: that the parties separated: he did not
see or hear defendant offer plaintiff any money, nor did he see defendant
have any.

J. R. Abernathy testified, that Springfield bank paper sunk greatly
below par, and ceased to circulate generally in the month of February,

Cockrill vs. Kirkpatrick.

1842: that previous to that time the money in circulation was principally Illinois, Kentucky, &c.

Thereupon the plaintiff asked the court to instruct the jury as follows:

1. That if they believe from the evidence that the defendant collected $30 12 1-2 of the plaintiff's money, and that the plaintiff informed the defendant that he was ready to receive it, or demanded it, or done any act equivalent to a demand, they will find for the plaintiff, unless they also find that the defendant has since that time, and before the bringing of this suit, paid or tendered to the plaintiff the said money.

2. That it is not necessary that a demand should be proven positively, but the jury may infer a demand from the circumstances in the case.

3. That circumstances are sufficient to make out a demand.

4. That although the defendant is entitled to a reasonable compensation for collecting the plaintiff's money, yet it was his duty to pay all the money, over and above what would pay him such compensation, for his trouble, and labor, and time.

5. That *"currency of Missouri"* only means such money as is issued or received by authority of the laws of Missouri or of the United States.

6. That it is not competent for a party to a written contract, or others, to prove that the contract was different from the terms thereof unless fraud or mistake is proven.

7. That currency, or current Bank paper, may mean such bank paper as is in general circulation, but currency of the United States, or of the State of Missouri, should be construed such currency as is authorized by the laws of the United States or of the State of Missouri.

8. That if the jury find for the plaintiff, they may find interest on the money from the time the same ought to have been paid.

9. That a tender of money is the actual production, and offer to pay the money, or a declaration made by the party to whom the money is to be paid, that he will not receive it.

10. That the offer of money in gross, or in a bag, does not make a tender; but it must be counted out, or the proper amount offered without demanding change, unless the party to whom the money was to be paid, declared that he would not receive it.

11. If a tender in bank bills is refused, and the bills are uncurrent, or under par at the time, the jury may infer from that fact that their uncurrency, or deficiency in value, was the cause of objection.

12. That a tender only bars the plaintiff from recovering costs, but he is entitled to recover the amount due.

The 2, 4, 6, 9, 10, 11 and 12 were given; the 1, 5 and 7 refused; whilst the 3 and 8 appear not to have been acted upon by the court.

The defendant then asked the following instructions to the jury.

1. If the jury believe the contract was made for such money as was current at the time when the same was due, the defendant had a right to collect the same in currency.

2. If the jury believe there was a tender of the money due, before the institution of the suit, and that the plaintiff refused to receive it, they will find for the defendant.

3. That the plaintiff in this case cannot recover, unless he or his agent made a demand of the defendant for the money before the suit was brought.

4. That if the jury believe a demand was made, yet if they believe the money was collected in the kind of money agreed to be paid, and that the defendant offered the same, and that the plaintiff refused to receive it when demanded, and after the defendant had offered to pay, deducting a reasonable compensation for collecting the same, they will find for the defendant.

5. A tender in bank bills or notes, is a good tender, unless specially objected to on that account at the time.

6. A tender and refusal to receive may be inferred from circumstances.

All of which were given by the court except the sixth, which appears not to have been acted upon.

The record then proceeds, "Denson was then again called before the jury, and in the main said, that he thought said note read "current money of Missouri," but he was not certain."

The jury having found a verdict for the defendant, the plaintiff filed his motion to set aside the verdict and for a new trial, &c., which having been overruled, he excepted to the opinion of the court.

Without undertaking to examine the instructions in detail, we shall investigate two or three points arising out of the case, as we believe a decision of those will decide the whole of the instructions.

If it be admitted that the note from Denson to Noble was payable "*in the currency of this State*," then we shall not have much difficulty in ascertaining what are the legal rights of the parties. These terms import either, first, gold or silver coin, which is the constitutional currency of the United States, the "tender money" of the several States of the Union; or, second, the notes of the bank of the State of Missourri, the issuing of which is authorized by the laws of this State, and cannot by any fair construction be made to mean the notes of the several banks

incorporated by the laws of other States, which for the time being may have been in circulation in this State.

But if the note was "payable in the current money of Missouri," as the obligor subsequently stated, then all necessity for construction is absolutely excluded, for the terms explain themselves, and can only mean "tender money," gold or silver coin. And this, too, without invoking the aid of the principle, that the language in an obligation is to be taken most strongly against the maker thereof.

The courts of Kentucky have had much difficulty in construing contracts of the description of the one now under consideration. In the case of Chambers vs. George, 5 Litt. 335, where the obligor untertook to pay a certain sum of money, "payable in the currency of the State," it was held not to be a direct promise to pay money. Then in the case of Lampton vs. Haggard, 3 Mon. 149, where the note sued on was for $350, "Kentucky currency," the court say, "that although the bank of Kentucky was in operation, it paid specie for its notes, and continued to do so for some time after the date of the note, hence the term used could only mean gold or silver." And in referring to the case of Chambers vs. George, the court say, "that the note in that case was given after the suspension of specie payments by the Bank of Kentucky, and the non payment of specie by other banks, subsequently established, had caused a paper circulating medium which, in popular acceptation, became emphatically the 'currency of Kentucky.'"

Again in the case of McCord vs. Ford, 3 Mon. 166, an action was brought on a note promising to pay $700, "current money of Kentucky," and it was held, that this was a direct promise to pay, and the terms used do not import the same as in the case of Chambers vs. George, but mean that kind of money made current by an act of Congress, which is the only current money of Kentucky. The court in the case of Bainbridge vs. Owen, 2 J. J. Marsh. 463, interpret "current money" to mean constitutional coin.

From the foregoing cases we glean the fact, that the meaning of such restrictive or qualifying terms, depend upon the varying circumstances of the country. Whilst the banks in Kentucky redeemed their notes in gold and silver, the expressions amounted to nothing, they were imperative ; but so soon as the banks suspended, then the parties were presumed to contract for the irredeemable paper currency of the State. Our bank, however, has not been forced into a position so humiliating, and our courts have not yet been driven to such extremities in endeavoring to satisfy the exigencies of the public on the one hand, and a faithful discharge of their duty on the other.

The only case decided by this court, which has been referred to, is the case in 7 Mo. R. 595, where the obligor promised to pay $2000 "in currency," and the court held the writing not to be a bill of exchange within the meaning of our statute concerning bills of exchange; and moreover that the obligee could only recover the value of currency at the falling due of the note.

If the note in question be, as is contended for, payable in the bank paper of Illinois, Kentucky, Indiana, Virginia, and Missouri, which constituted the principal paper circulation at the date of the contract, whose right would it be to designate in which of the various descriptions of paper the payment should be made? This would become an enquiry of some moment to the parties, because the relative value of the notes of the enumerated banks, might vary from five to twenty per cent. If Illinois, Indiana, Kentucky and Virginia bank paper constituted the "currency of this State," or "the current money of Missouri," then we concede that the payment in Illinois bank paper was a good payment; but if the paper circulation of the Missouri bank, and gold and silver, constituted "the currency of this State," or "the current money of Missouri," then the obligor was bound for such paper and coin; and a payment in any other description of bank paper was not in conformity with the terms of the contract. We have no hesitation or difficulty in declaring that the undertaking in this case was to pay Missouri bank paper, which was by law made the paper "currency of this State," or gold or silver coin, which by the constitution of the United States, constitutes the "current money of Missouri," as well as of all the other States in the confederacy.

But the defendant's counsel contends that even if the note should be construed to mean what the plaintiff insists it does mean, yet the defendant, as the agent of the plaintiff, had a right to go behind the note, and receive payment in that description of currency, contracted for by the original parties, and refers to Theobold on Agency, 356, for authority. It is there said, "neither is an agent chargeable for a breach of his instructions, if the compliance would have been a fraud upon others," (Burwell vs. Christie, Cowp. 395.) The technical answer to this, and the like cases, is, that the court will not permit a plaintiff to allege his own fraud. Thus an agent was employed to sell certain articles, and the condition of the sale purported that the highest bidder should be the purchaser; but the agent had private instructions not to sell under a certain sum; notwithstanding which, he sold for the highest sum bid, though less than the sum prescribed; and upon an action brought against him by his employer, he had judgment in his favor, since he could not

have obeyed his instructions without practicing a fraud upon the bidders. But it would have been otherwise if the direction had been to set the article up at the price mentioned, since no fraud could have ensued from that circumstance. Howard vs. Christie, 6 T. R. 347.

We do not think this principle applicable to the case now before us, for if the point be conceded that the note from its terms was payable in Missouri bank paper, or gold and silver coin, then there is no principle of law by which the obligor would have a right to go behind the note, to show that it was payable in a currency less valuable; and a contrary doctrine, in cases like this, would be most monstrous and mischievous. Here the obligor executes an instrument of writing, by which he binds himself to pay a certain sum of money in a way therein specified, at a day named; which writing is made assignable by law; and after assignment, when it falls into the hands of an individual who looks to the face of the instrument for the extent and character of the obligation, the obligor claims that although he has bound himself to pay the debt in the constitutional currency, yet it was his understanding that it was to be paid in irredeemable and worthless bank paper. And the agent of the assignee goes behind the written contract, and receives from the obligor, a discharge in this worthless paper currency, and when his principal demands payment, he says, I have done what in equity you ought to have done, and the law will hold me faultless. The fraud if any there be in the transaction, is surely not chargeable against the assignee of the note.

The defendant had no right to prove the contents of the note without first showing its loss, or destruction, or otherwise accounting for its absence. From any thing that appears in the evidence, the maker of the note may have had it in his pocket, when he was testifying to its contents; and if so, it should have been produced, it being the best evidence; but in this case the non-production of the note is not very important, inasmuch as the evidence of the witness does not qualify its legal import.

We are of opinion that before a principal can maintain an action against his agent for money received or collected by him for his principal, that a demand should be made. What constitutes a demand, is a question for the jury to decide, and in making their decision they are to take into consideration all of the attendant circumstances.

Tender is an offer to perform a contract, or to pay money, coupled with a present ability to do the act; and all the instructions about a sum in gross, and money in a bag, are outside of this case, for there is no evidence whatever upon which to predicate such an instruction. Ten-

der, like a demand, may be proven by circumstances, and need not be established by direct, positive, and unequivocal evidence, When established, it prevents the running of interest, and may save costs when the money is brought into court, and deposited, but the plaintiff is, notwithstanding, entitled to his judgment for his debt, as the tender is not a satisfaction of the debt due. The tender need not be in constitutional coin, but is good in bank paper, unless objected to on that account at the time; if made in depreciated bank notes, the refusal to accept, may be presumed to arise from the fact of such depreciation.

From the foregoing views, it results that the circuit court erred, and the other members of the court concurring herein, the judgment of the circuit court is reversed, and the cause remanded for a new trial.